IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA B. ORTEGON,<br><br>          Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | CASE NO.  1:03-cv-6346 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |

     Plaintiff Cynthia B. Ortegon ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint on September 30, 2003, and her opening brief on June 17, 2004.  The Commissioner filed her opposition to the appeal on July 28, 2004.  Claimant filed a reply brief on August 25, 2004.

     Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated March 10, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

## JURISDICTION

On July 19, 2000, claimant protectively filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset of October 23, 1999, due to multiple sclerosis. (Administrative Record ("AR") 99-101, 119). The application was denied initially and on reconsideration. (AR 84-94).

After timely requesting a hearing, claimant appeared before Administrative Law Judge ("ALJ") David E. Flierl on January 28, 2002, at which time he heard testimony solely from claimant. (AR 39-71). On February 22, 2002, the ALJ issued a decision finding that claimant was not disabled. (AR 20-28). The Appeals Council denied a request for review on August 19, 2003. (AR 6-10). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

The relevant time period in this action is from October 23, 1999 (the date claimant alleges her disability began) through February 22, 2002 (the date of the ALJ's determination in this case). However, claimant's insured status expired on December 31, 2001, therefore, claimant must prove disability prior to that date. (Court Doc. 14, p. 2; AR 103). Evidence from outside this time period can be deemed useful as background information; however, it is irrelevant to the extent that it does not address claimant's medical status during the relevant period at issue in this action.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was born on October 23, 1963, making her 38 years old at the time of the ALJ's decision. (AR 99, 42, 28). Claimant testified that she stands approximately 5'4" tall and weighs about 200 pounds. (AR 42). She testified that she usually weighs about 140 pounds but the medication she takes, and her lack of physical movement over the past two years, have led to a weight increase. (AR 42). Claimant stated that she completed her bachelor's of science degree at Fresno State University in May of 2001. (AR 43). Claimant's past relevant work consists of work as a kitchen assistant at a motel from June of 1983 until June of 1988, work as an administrative assistant at Stanford University from September

of 1988 until July of 1996, and work as an intern at T.D. Willey Farms from June of 2000 until July of 2000. (AR 44-48, 121). Her work as a kitchen assistant consisted of food preparation for the motel's continental breakfast as well as cleaning up and washing dishes. (AR 44-45). Claimant's job at Stanford University consisted of data processing, filing, copying and customer service. (AR 46-47, 121). During her short summer internship at the farm, her primary duty consisted of fertilizer trial testing. (AR 47-48).

At the administrative hearing held on January 28, 2002, claimant testified that she had been working part-time as a certification coordinator, earning about $600 a month, since November of 2001. (AR 42-43). She works for California Certified Organics Farmers and is allowed to work from her home. (AR 48). As a certification coordinator, she schedules inspections at the farms and receives and reviews the paperwork and forms from the inspectors that are needed for certification. (AR 48). She indicated she works about 10 to 15 hours per week and no more than three hours per day. (AR 49). Claimant testified she will work no longer than one hour at a time before having to take a two to three hour break. (AR 49).

With regard to her college degree, claimant indicated that, because she had previously taken junior college courses at Madera Community College, it took her only three years to finish her degree at Fresno State University. (AR 49-50, 65). She took, on average, four to five classes a semester at Fresno State University. (AR 50, 66). However, Fresno State University provided her with special accommodations, giving her a note taker and allowing her to take tests in the professors' offices in order for her to have more time on the test and to take the test in an "un-stressful environment." (AR 50). Claimant was also given a disability parking plaque so that she was able to park closer to her classes. (AR 50).

Claimant appeared at the administrative hearing with a cane which she reportedly had used for about two years. (AR 50). She indicated that, before using the cane, it was necessary for her to use a walker beginning in 1999. (AR 50-51). Claimant testified that she began having difficulty with her upper extremities in 1993. (AR 52). It started with a tingling sensation in her fingers which progressed to her right forearm. (AR 52-53). In 1995, she developed tendonitis in both arms and

///

could not straighten her fingers. (AR 53). She indicated that in 1996 Dr. Hoffman stated that she possibly had multiple sclerosis ("M.S."). (AR 54).

Claimant testified that her symptoms, pain and weakness in her arms and legs, require her to spend "a couple of hours to get dress," and make it very difficult for her to wash her hair and shower. (AR 56-57). She lives with her mother, and indicated that her mother does the cooking, cleaning and vacuuming. (AR 56-57). Claimant testified that she does her own laundry, does a little grocery shopping, and drives a motor vehicle. (AR 57-58). Although she indicated that she has problems gripping and difficulty finding the brake and gas, she was able to drive for two hours from Madera to San Jose. (AR 57-58).

Claimant stated she also had symptoms of depression since 1999. (AR 58-59). However, she stated that she was not seeing any mental health doctors for her depression. (AR 67). She testified that she additionally has problems with fatigue and concentration. (AR 60). Furthermore, she experiences episodes of arm tremors, which she described as involuntary movements in her arms, during periods of high stress. (AR 63-64). She indicated that these arm tremors last, at most, a half-hour, and that she experiences them weekly. (AR 64).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b),
///

416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

5

F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that claimant has not engaged in substantial gainful activity since her alleged onset date, October 23, 1999.  (AR 21).  At step two, the ALJ determined that claimant has the severe impairment of multiple sclerosis, with related symptoms of depression, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 22).  The ALJ found that claimant's allegations regarding her

limitations were not credible to the degree she alleged. (AR 25-27). The ALJ determined that claimant has the residual functional capacity to perform the physical exertion requirements of sedentary work. (AR 26).

Based on claimant's residual functional capacity, the ALJ found that claimant could perform her past relevant work as a secretary. (AR 27). In the alternative, the ALJ determined that, based on claimant's residual functional capacity, age, education, and work experience, Medical Vocational Rule 201.28 would direct a finding that she is "not disabled." (AR 27). Accordingly, the ALJ found that claimant was not disabled within the meaning of the Social Security Act. (AR 27-28).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law. Specifically, she argues that the ALJ's step four finding, that claimant could return to her past relevant secretarial work, is erroneous because the weight of the record evidence shows that claimant has a limited ability to grip, grasp, handle, twist, turn and type with her hands. Due to these upper extremity restrictions, claimant argues that the ALJ's step five finding is also erroneous, because vocational expert testimony was required to attest to the erosion of the sedentary occupation base before a conclusion regarding claimant's disability status could be made.

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

Claimant asserts that the ALJ erred by failing to find that claimant's impairments restrict her ability to grip, grasp, handle, twist, turn and type with her hands. (Court Doc. 14, p. 9). Claimant argues that the overwhelming weight of the record evidence supports a finding that she continues to suffer from manipulative limitations, and, as a result, she is unable to perform her past secretarial work, which requires writing, typing, grasping and handling of small objects, as well as any other sedentary job existing in the national economy. (Court Doc. 14, pp. 9-16). In the alternative,

///

///

claimant contends that this Court should remand the case for further administrative proceedings in order to ascertain, with the assistance of vocational expert testimony, the erosion of the sedentary occupation base due to claimant's manipulative restrictions.

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the Residual Functional Capacity ("RFC") to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. RFC is defined as "what an individual can still do despite his or her limitations." SSR 96-8p.

Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ. SSR 96-5p. It is thus the ALJ's responsibility to make a RFC determination, however, in making his finding, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-8p.

Based on claimant's RFC, the ALJ found at step four that claimant could perform her past relevant work as a secretary. (AR 27). In the alternative, at step five, the ALJ determined that, based on claimant's age, education, and work experience, Medical Vocational Rule 201.28 would direct a finding that she is "not disabled." (AR 27).

With regard to claimant's manipulative limitations, the ALJ concluded that the medical record exhibited that although "claimant had significant upper extremity limitations in 1995, which caused her to leave her previous job, based on the records from her alleged onset date to the present, these symptoms have resolved and the limitations previously assigned [to] the claimant do not appear to be appropriate at this time." (AR 26). The undersigned disagrees with this finding.

In 1997, claimant's treating medical professionals, Peter B.J. Wu, M.D., and Thomas J. O'Laughlin, M.D., concluded that claimant had restrictive upper extremity problems. (AR 171-198).

On January 31, 1997, Dr. Wu determined that claimant suffers from chronic pain syndrome in her bilateral hands. (AR 180). In a letter dated April 28, 1997, Dr. Wu indicated that claimant suffered from chronic pain syndrome in her bilateral upper extremities. (AR 179). He opined that

1  claimant's problems were the result of her occupation and that she should not continue to perform
2  repetitive gripping and grasping with her hands. (AR 179). He additionally found that claimant
3  should avoid repetitive fine manipulation of both hands, pushing and pulling objects over 10 pounds
4  and repetitive twisting and torquing. (AR 179). In a letter dated May 21, 1997, Dr. Wu indicated
5  that claimant had "only 20% of her pre-injury lifting capacity" and was "unable to perform forceful
6  pushing, pulling, twisting, or torquing." (AR 178).

7  Dr. O'Laughlin treated claimant throughout the latter part of 1997. (AR 181-195). On
8  August 5, 1997, claimant complained of burning, aching pain in both upper extremities, forearms,
9  wrists and hands. (AR 195). Dr. O'Laughlin diagnosed overuse syndrome of both upper extremities
10  with left greater than right, extensor greater than flexor myofascial pain syndrome. (AR 197). On
11  August 19, 1997, claimant returned to Dr. O'Laughlin complaining of the same symptoms of aching
12  and weakness. (AR 191). On September 16, 1997, claimant reported improvement in her forearm
13  discomfort and an increase in strength. (AR 185). However, claimant continued to complain of
14  aches in her hands. (AR 185). Dr. O'Laughlin concluded that claimant's condition was permanent
15  and her symptoms were unlikely to disappear. (AR 186). He indicated that the performance of
16  repetitive motion is what causes her problems and it, therefore, needed to be abstained from. (AR
17  186). Dr. O'Laughlin stated that claimant's condition was chronic and permanent. (AR 187). On
18  October 29, 1997, Dr. O'Laughlin noted that he had kept claimant off of work; she was not
19  keyboarding and she was doing very limited grasping and carrying, lifting or repetitive activity with
20  the upper extremities. (AR 183). As a result, claimant reported that her symptoms were 50% better
21  and her hand strength had improved. (AR 183-184). Dr. O'Laughlin recommended that claimant
22  avoid repetitive motion and, for the time being, refrain from attending work. (AR 184).

23  On December 16, 1997, claimant reported significant problems with weakness in the left
24  hand; she could not do any keyboarding or typing activity, was still experiencing some stinging in
25  the wrist area and had problems writing with her right hand. (AR 181). Dr. O'Laughlin found that
26  claimant was "disabled from her usual position as a secretarial/office worker and is not capable of
27  performing this type of work any longer." (AR 181). He opined that "[a]ny attempt at doing so,
28  returning to repetitive filing activities, keyboarding, and repetitive motion with the hands [and]

9

fingers, is going to back fire and cause a regression of her symptoms and induce further myofascial pain." (AR 181). Dr. O'Laughlin diagnosed upper extremity overuse syndrome/myofascial disorder of the forearms, wrist, and finger extensor greater than flexor musculature. (AR 181). He opined that claimant would likely have this problem for an ongoing basis, indicating these problems can persist for a lifetime, and that she is probably doing as well as she can at this point. (AR 181). He specifically stated that it would be a mistake to return claimant to the type of activity that she was engaging in as a secretary, noting that her symptom improvement was largely a function of rest. (AR 182). Dr. O'Laughlin listed her permanent work restrictions as no repetitive use of the hands, no heavy grasping activities, no lifting or grasping greater than five pounds with the left hand, no lifting or gasping greater than 10 pounds with the right hand, and no keyboarding activity. (AR 182).

The Commissioner asserts that the ALJ appropriately found that claimant's manipulative limitations had resolved. (Court Doc. 15, p. 6). The Commissioner argues that the reports of Drs. O'Laughlin and Wu occurred prior to the alleged date of onset. (Court Doc. 15, p. 6). As noted above, the relevant time period in this action is from October 23, 1999 (the date claimant alleges her disability began) through February 22, 2002 (the date of the ALJ's determination in this case). However, evidence from outside this time period can be deemed useful as background information. With the reports of treating medical professionals O'Laughlin and Wu as useful background information, further review of the record demonstrates that claimant's upper extremity limitations, as described by Drs. O'Laughlin and Wu, persisted throughout the relevant time period. The Commissioner relies on the October 21, 2000 report of Benjamin Chang, M.D., which indicates that claimant did not have manipulative limitations (AR 249), as support for the ALJ's conclusion that claimant's upper extremity dysfunction had resolved. (Court Doc. 16, p. 8). However, Dr. Chang's one-time examination contrasts with the vast records which evidence claimant's persistent upper extremity limitations.

Medical reports from California State University, Fresno, reveal that arm and hand pain and discomfort were noted on September 14, 1999. October 19 and 26, 1999 medical reports indicate that claimant continued to complain of pain, numbness and weakness in her hands. (AR 209). On
///

November 15 and 29, 1999, it was reported that claimant still had pain and weakness in her hands and arms and that she was experiencing hand or arm shaking/tremors. (AR 202-205).

A neurologist, Frank L. Cantrell, M.D., examined claimant on December 2, 1999. (AR 229-232). Claimant complained of weakness and tremoring of her upper limbs, and Dr. Cantrell noted marked weakness of the distal musculature of the upper limbs. (AR 229, 231).

Perminder Bhatia, M.D., examined claimant on August 21, 2001 and noted that she had tremors in the right hand and numbness in her hands and fingers. (AR 280). Dr. Bhatia saw claimant again on December 12, 2001. (AR 283-284). Claimant reported tremors and weakness in the right arm to Dr. Bhatia. (AR 283). On January 14, 2002, Dr. Bhatia indicated that claimant was "permanently disabled" due to the symptoms arising from her multiple sclerosis. (AR 285).

With the reports of Drs. O'Laughlin and Wu as useful background information, a review of the record shows that, contrary to Dr. Chang's findings, claimant's upper extremity limitations persisted throughout the relevant time period.

The Commissioner also cites claimant's demonstrated ability to attend school and work part-time as evidence of a lack of disabling manipulative limitations. (Court Doc. 16, pp. 7-8). However, as noted by claimant, her part-time work is performed in her house, which allows her to make adjustments not available in the competitive marketplace, and Fresno State University provided accommodations to assist her in obtaining her degree. (Court Doc. 18, p. 3). At the administrative hearing, claimant indicated that she works about 10 to 15 hours per week but no more than three hours per day. (AR 49). She testified that she will work no longer than one hour at a time before having to take a two to three hour break. (AR 49). With regard to her college degree, claimant indicated that the university provided her with special accommodations, giving her a note taker and allowing her to take tests in the professors' offices in order for her to have more time on the test and to take the test in an "un-stressful environment." (AR 50). The university also provided her with a disability parking plaque so that she was able to park closer to her classes. (AR 50).

It is apparent from the substantial weight of the record evidence that claimant continues to have upper extremity restrictions of the type described by Drs. Wu and O'Laughlin in 1997. Accordingly, the ALJ erred by finding that claimant's upper extremity limitations had resolved when

making his disability determination. Based on this error, it comes as a logical consequence that the ALJ's step four finding, that claimant could return to her past relevant secretarial work, is based on an erroneous RFC finding. Nevertheless, the undersigned concludes that remand is necessary to clarify the record. A redetermination of claimant's physical capacity should be performed on remand which takes into consideration claimant's upper extremity limitations. A reassessment of claimant's physical RFC, with supplemental medical consultant information, is necessary before a determination can be made regarding whether claimant is disabled as defined by the Social Security Act at step four of the sequential evaluation process.

The undersigned has concluded that a review of the record reveals that claimant's upper extremity limitations diminish her ability to perform work. Supra. Therefore, it follows that the ALJ's alternative step five determination is also erroneous since whether claimant's manipulative restrictions prevent her from performing other work in the national economy is unascertainable without testimony from a vocational expert.

After a claimant has established a prima facie case of disability by demonstrating she cannot return to her former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. Burkhart, 856 F.2d at 1340 (citing Derosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 578 (9th Cir. 1988). However, the use of the grids is not always proper. If a claimant has non-exertional limitations[1] that significantly limit her range of work, the use of the grids in determining disability is inappropriate. Bates v. Sullivan, 894 F.2d 1059 (9th Cir. 1990) *overruled on other grounds* Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir. 1991). In such instances, a vocational expert must be called to identify jobs that

---

[1] Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." Soc. Sec. Rul. 96-8. See also 20 C.F.R. Pt. 416.969a; Derosiers, 846 F.2d at 579.

match the abilities of the claimant, given her limitations.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

At step five, the ALJ determined that, based on claimant's RFC, age, education, and work experience, grid rule 201.28 would direct a finding that she is "not disabled."  (AR 27).  However, as determined above, claimant's physical RFC must be reassessed, on remand, with supplemental medical information.  Supra.  Whether claimant is actually capable of performing other work remains unresolved in this case.  Accordingly, on remand, claimant's newly assessed RFC shall be presented to a vocational expert in order to determine if claimant is capable of performing other jobs available in the national economy, despite all of her severe and non-severe impairments and limitations, including her upper extremity restrictions.  The ALJ shall therefore determine claimant's ability to perform other work in the national economy, with the assistance of vocational expert testimony, at a new hearing.  The undersigned finds that, on remand, the ALJ shall also take into consideration any other evidence or testimony relevant to claimant's disability claim.

## CONCLUSION

Claimant argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits.  The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Remand is appropriate when additional administrative proceedings could remedy defects.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).  Remand for the payment of benefits is required where "(1) the ALJ . . . failed to provide legally sufficient reasons for rejecting [the] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the evidence that the ALJ would be required to find the claimant disabled were such evidence credited."  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

In this case, further development is necessary for a proper determination to be made.  A redetermination of claimant's RFC should be performed on remand which takes into consideration the record evidence which demonstrates that claimant suffers from persistent upper extremity

limitations.  On remand, the ALJ shall also take into consideration any other evidence or testimony relevant to claimant's disability claim.  Finally, claimant's newly assessed RFC should be presented to a vocational expert, at a new hearing, in order to determine if claimant is capable of performing her past relevant work or other jobs available in the national economy, despite all of her severe and non-severe impairments and limitations, including her upper extremity restrictions.

For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny claimant disability benefits was not supported by substantial evidence in the record and was not based upon the proper legal standards.

Accordingly, it IS ORDERED that

1. Claimant's social security complaint IS GRANTED;

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform claimant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and whether on the basis of claimant's age, education, work experience, and residual functional capacity, claimant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f); and

3. Judgment BE ENTERED for claimant Cynthia B. Ortegon and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

**Dated:   May 3, 2005**               /s/ Theresa A. Goldner
j6eb3d                                  UNITED STATES MAGISTRATE JUDGE